UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
EFFIE FILM, LLC,                                            :
                                     Plaintiff,  :
                                                            :     11 Civ. 7087 (JPO)
               -against-                                :
                                                            :     MEMORANDUM AND
EVE POMERANCE, a/k/a EVE MOSSEK,                            :         ORDER
                                 Defendant.   :
                                                            :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Presently before the Court is a motion filed by Plaintiff for an award of costs and attorney's fees. Much of the procedural history of this case and the Court's analysis of its merits are set forth in a prior opinion granting Plaintiff's motion for judgment on the pleadings. *See Effie Film, LLC v. Pomerance*, No. 11 Civ. 7087, 2012 WL 6584485 (S.D.N.Y. Dec. 18, 2012) ("the Opinion").[1] For the reasons that follow, Plaintiff's motion for costs and fees is denied.

I.     **Discussion**

     A.    **Standard for Awarding Fees**

      The Copyright Act permits a court to "allow the recovery of full costs by or against any party," and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. As the Supreme Court has emphasized, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534; *accord Medforms, Inc. v Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 117 (2d Cir. 1989) (explaining that attorney's fees "are available to prevailing parties under . . . the Copyright

---

[1] Because facts that were not included in the Opinion bear on the Court's analysis, the Court assumes the parties' familiarity with the procedural history of this case.

Act but are not automatic"). "Prevailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty*, 510 U.S. at 534.

In determining whether it is appropriate to award fees and costs to a prevailing party, a court must determine whether doing so would "vindicate underlying statutory policies." *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1127 (2d Cir. 1989). There is "no precise rule or formula" for making this determination; rather, a court must exercise its "equitable discretion" while balancing a variety factors, including "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534, 534 n. 19 (citation omitted).

### B. Application

#### 1. Objective Unreasonableness

The Second Circuit has instructed lower courts to afford "substantial weight" to a finding of "objective unreasonableness." *Mathew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). Indeed, because "any factor a court considers in deciding whether to award attorney's fees must be faithful to the purposes of the Copyright Act . . . the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright act." *Id.* (quotation marks and citation omitted); *accord Russian Entertainment Wholesale, Inc. v. Close-Up Int'l, Inc.*, 482 Fed. Appx. 602, 607 (2d Cir. 2012) (affirming a decision not to grant statutory fees based solely on defendant's objective reasonableness). Nonetheless, where there is no finding of objective unreasonableness, a fee award is not "necessarily preclude[d] . . . . In an appropriate case, the presence of other factors might justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable." *Matthew Bender & Co., Inc.*, 240 F.3d at 123 (citation omitted).

Of course, "an unsuccessful claim does not necessarily equate with an objectively unreasonable claim." *Ann Howard Designs, L.P. v. Southern Frills, Inc.*, 7 F. Supp. 2d 388, 390 (S.D.N.Y. 1998); *CK Co. v. Burger King Corp.*, No. 92 Civ. 1488, 1995 WL 29488, at *1 (S.D.N.Y. Jan. 26, 1995) (explaining that "not all unsuccessful litigated claims are objectively unreasonable"). To the contrary, "the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable." *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (quotation marks and citation omitted).

A party's good faith decision to litigate complex or undecided issues of law is not objectively unreasonable. *See, e.g.*, *Bourne Co. v. Walt Disney Co.*, No. 91 Civ. 0344, 1994 WL 263482, at *2 (S.D.N.Y. June 10, 1994) ("Among the factors that may justify the denial of fees to a prevailing plaintiff is the presence of a complex or novel issue of law that the defendants litigate vigorously and in good faith." (internal quotation marks and citation omitted)).

As the Court recognized in the Opinion, this case involved "[w]orks of history and historical fiction" that "present unique complexities for substantial similarity analysis." *Effie*, 2012 WL 6584485, at *16. Examining *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir. 1980), a case that has "generated considerable commentary and criticism," *Effie*, 2012 WL 6584485, at *17, the Court noted a measure of disagreement among treatise writers and courts about how to approach copyright analysis in historical cases, *see Effie*, 2012 WL 6584485, at *19 (contrasting *Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989), and *Chase–Riboud v. Dreamworks, Inc.*, 987 F.Supp. 1222 (C.D. Cal. 1997), with *Burgess v. Chase–Riboud*, 765 F. Supp. 233 (E.D. Pa. 1991)). The Court then linked this line of precedent to the ruling in *Crane v. Poetic Products Ltd.*, 593 F. Supp. 2d 585, 590 (S.D.N.Y. 2009) *aff'd*, 351 F. App'x 516 (2d Cir. 2009), which undertook the difficult task of applying the Supreme Court's opinion in *Feist*

*Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340 (1991), to a novel context. Crystallizing this series of precedents into a legal standard suitable for works of history, the Court identified several "further twist[s]" that apply to works of "historical fiction." *Effie*, 2012 WL 6584485, at *20. Ultimately, the Court concluded that:

> In such cases, copyright analysis requires an initial separation of protectible from unprotectible elements—in other words, a separation out of the unprotectible historical facts and interpretations. Once that separation is achieved to the greatest extent possible, courts must test for violations of the full copyright protection afforded to the remaining protectible elements. In some cases, it may also be appropriate to test for violations of the "thin" copyright protection afforded to originality in the arrangement of unprotectible facts . . .
>
> . . . to the extent that the disputed works are similar with respect to plot structure, individual scenes, settings, or features of individual characters that reflect historical facts or interpretations, those similarities do not count toward substantial similarity analysis. Rather, substantial similarity must be shown through reference to the creative aspects of these works, such as fictional plot developments, scenes, settings, and character traits. Substantial similarity can also be demonstrated through reference to creative devices that span the protectible and unprotectible elements of the works and transform the atomized facts into a meaningful, fictional story. These devices include pace, theme, and narrative structure

*Effie*, 2012 WL 6584485, at *20-21. While this analytical method followed from precedent, and was faithful to cases about the use of history in substantial similarity analysis, it can hardly be said that the law in this field was well settled when this litigation began. Indeed, since *Hoehling*, no Second Circuit case has squarely addressed the issues identified in *Crane* and *Effie*.

      For that reason, the Court cannot conclude that Defendant acted unreasonably when she first indicated her copyright concerns to Plaintiff, thereby prompting Plaintiff to file a suit for declaratory judgment. Simply put, at that time, Defendant was not well positioned to predict how a court would approach copyright analysis in this case. Although the Opinion concluded that there was virtually no substantial similarity between the Pomerance Works and the final

version of the Effie screenplay,[2] that conclusion rested on an effort to clarify existing doctrine. It also hinged in significant part on the exclusion of unprotectible historical facts and interpretations from the substantial similarity analysis—a methodology that requires difficult judgment calls about the line between creative fictionalization and historical interpretation. *See Effie*, 2012 WL 6584485, at *16-23. Given the scarce precedent in this field, it would not have been objectively unreasonable for Defendant to take a very different view of the degree to which the Original Effie Script infringed truly original content in the Pomerance Works. If the Court had adopted a broader view of what parts of the Pomerance Works qualified as protectible, the legal analysis may have turned out differently. Further, although the Court did not deem the similarities "substantial," there are some similarities in the protectible portions of the works.

      Two additional considerations cut against a finding of objective unreasonableness. First, at the time Defendant contacted Plaintiff to express concerns about copyright infringement, Defendant had good reason to believe that Plaintiff enjoyed access to the Pomerance Works. Specifically, she knew that Gregory Wise—Emma Thompson's husband, researcher, and occasional co-author—had been in possession of a copy of one of the Pomerance Works when he and Thompson researched and drafted the Original Effie Script. Second, the Court has reviewed the Original Effie Script and concluded that Defendant's case would have been notably stronger if the Pomerance Works were compared to the Original Effie Script instead of the Final Effie Script.[3] This is significant because Defendant originally raised copyright concerns with respect to the Original Effie Script and it was only later in the litigation process that she obtained access

---

[2] The Court will refer to both of Defendant's works as "the Pomerance Works," to the pre-filming version of Plaintiff's screenplay as "the Original Effie Script," and to the post-filming version of Plaintiff's screenplay as "the Final Effie Script."

[3] This is not to say that these works are, or are not, substantially similar. It is merely to observe that the arguments for substantial similarity would be stronger as compared to the Final Effie Script.

to the Final Effie Script. Indeed, there is reason to believe that the Final Effie Script was modified, in part, to account for the very copyright issues at the heart of this litigation.

Accordingly, the Court concludes that the objective unreasonableness inquiry strongly disfavors an award of attorney's fees to Plaintiff.

### 2. Defendant's Conduct

If the "conduct" of the party opposing attorney's fees has been "unreasonable, a district court has the discretion to award fees." *Matthew Bender & Co., Inc.*, 240 F.3d at 122. "However, an 'award [that] essentially punishes [a party] for availing itself of a right provided by the Federal Rules' is an abuse of discretion, since '[t]o allow fees on this basis would be to deter the exercise of rights afforded to litigants in federal court.'" *Canal+ Image UK Ltd. V. Lutvak*, 792 F. Supp. 2d 675, 681 (S.D.N.Y. 2011) (quoting *Matthew Bender & Co., Inc.*, 240 F.3d at 126 (alteration in original)). Further, where a court "has no reason to doubt that, throughout the litigation, [a party] sincerely believed that [her work] was entitled to copyright protection and pursued [her] claim for the purpose of vindicating [her] rights," that fact "weighs against awarding costs and attorneys' fees against [her]." *Silverstein v. Penguin Putnam, Inc.*, 01 Civ. 309, 2008 WL 678559, at *4 (S.D.N.Y. Mar. 12, 2008). Here, Defendant litigated her claims in a proper and objectively reasonable manner. At no point did Defendant employ any dilatory, vexatious, harassing, or other improper tactics. This considerations thus favors Defendant.

### 3. Compensation and Deterrence

"The primary purpose of the Copyright Act is to encourage the origination of creative works by attaching enforceable property rights to them." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 618 (S.D.N.Y. 2009) (quotation marks and citation omitted). Accordingly, attorney's fees and costs may be awarded if there is a "need . . . to advance considerations of compensation and deterrence." *Matthew Bender & Co., Inc.*, 240 F.3d at 122 (quoting *Fogerty*, 510 U.S. at 534,

n.19).  That said, courts are wary of the "the potentially chilling effect of imposing a large fee award on a [party], who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim."  *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998).

In light of the Court's conclusion that Defendant's position was not objectively unreasonable, the strong presumption is that an award of fees and costs will not promote the purposes of the Copyright Act.  *See Matthew Bender & Co., Inc.*, 240 F.3d at 122 ("[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.").  Plaintiff argues that because *Effie* is an independent production, dependant on "the willingness of numerous investors to risk their money on bringing a serious, literature film to an adult public," the policy-based case for fees is strong.  This is a good argument—but standing alone, it proves too much.  *See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011) ("Fiesta notes that it is a small company without a litigation budget.  Yet this fact alone does not mean that it must be compensated for the cost of defending against a not unreasonable copyright infringement claim.").  Further, the Court notes that in bringing this case and presenting the courts with an opportunity to examine how copyright law addresses works of historical fiction, Defendant furthered the broader policy desideratum of bringing further clarity to the law.  *See Belair v. MGA Entm't, Inc.*, 09 Civ. 8870, 2012 WL 1656969, at *2 (S.D.N.Y. May 10, 2012) ("A court should also decline to award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law.").

In the end, and particularly when linked to the Court's finding that Defendant did not act objectively unreasonably, these factors only weakly support Plaintiff.

**II.     Conclusion**

For the foregoing reasons, Plaintiff's motion for attorney's fees and non-taxable costs is DENIED.

The Clerk of Court is directed to close the motion entry at Dkt. No. 37.

SO ORDERED.

Dated:  New York, New York
        April 24, 2013

_____
J. PAUL OETKEN
United States District Judge